## Jackson Estate

*Edmund L. Harvey* and *Freeman & Fox*, for accountants.

*E. Wallace Chadwick* and *John W. Wellman* of *Chadwick, Curran, Petrikin & Smithers*, for income beneficiary.

*Robert W. Beatty* of *Butler, Beatty, Greer & Johnson*, and *Claude C. Smith* of *Duane, Morris & Heckscher*, for claimants.

VAN RODEN, P. J., May 12, 1958.—Decedent died October 11, 1949. By her will she bequeathed the sum of $65,000 in trust, directing the trustees "to use, in

their uncontrolled discretion, the net income for the education, maintenance and support of my grandson, Bruce J. Campbell, until he attains the age of twenty-five (25) years", with provision that "upon the death of Bruce J. Campbell, or upon his attaining the age of twenty-five (25) years, this Trust shall terminate and the corpus or principal and any unexpended, accumulated income shall be distributed in equal shares among my children living at the termination of said Trust in equal shares and the issue of any deceased child or children, such issue to take the parent's share per stirpes."

Bruce J. Campbell, the income beneficiary, is now 24 years of age, having been born January 20, 1934. Since the inception of the trust the trustees have been expending some, but less than all, of the income for his care, maintenance and education. As of the date of filing the account, there was a balance of accumulated and undistributed income in the hands of the trustees amounting to $5,042.33.

The court has been requested to determine whether the accumulated undistributed income should presently be distributed to or expended for Bruce J. Campbell or whether it should be retained by the trustees until the termination of the trust and then distributed unto decedent's issue per stirpes. In other words, do the trustees have the right to determine the *amount* of income to be expended for the benefit of Bruce J. Campbell or only the *manner* in which *all* the income should be expended?

From the testimony and other evidence submitted at a hearing held in open court on this issue, the court finds the facts to be as follows:

Bruce J. Campbell, grandson of testatrix, was born January 20, 1934, being the youngest of three brothers and one sister. His mother died at his birth, and from

infancy he was reared in the home of his grandmother (testatrix). Following the death of testatrix, Bruce maintained his residence with his uncle, Herbert W. Jackson, while he attended George School and Earlham College, until his graduation in 1956.

Decedent designated her son, Herbert W. Jackson, and Provident Trust Company of Philadelphia, now Provident Tradesmens Bank and Trust Company, and hereinafter referred to as Provident, as cotrustees of the $65,000 trust above mentioned, and the trustees paid Bruce's expenses of education and support and also supplied him with pocket money. The trustees also paid an income tax upon the entire net income of the trust fund as being distributed or distributable to Bruce.

Bruce also shared in testatrix's residuary estate as well as in certain gifts made by his grandfather, John Jackson, deceased, which sums were held by Provident either as trustee or guardian and were distributable to Bruce upon attaining the age of 21 years. Part of said other funds were also used for Bruce's expenses, thereby resulting in the augmentation of unexpended income from the trust created under testatrix's will. After Bruce attained his majority in 1955, the trustees made maintenance payments to him of $75 from the net income of the trust in addition to paying other expenses. After his graduation from college in 1956, the $75 monthly allowance payments were discontinued. Shortly after graduation, Bruce married, and in August 1956, he wrote to the trustees stating that he assumed the $75 monthly allowance would be continued. After an exchange of correspondence, the trustees decided to continue the $75 monthly payments, making same retroactive to July 1956.

It is noted that as of the time Bruce reached his majority in 1955, about $1,774 in "excess" income had been accumulated by the trustees, with said unex-

pended balance amounting to $7,252 at the time of his graduation from college in June 1956, and that there was an accumulated balance of unexpended income in the amount of $5,042.33 as of the date of filing the account presently before the court.

It is clear that testatrix manifested greater concern for Bruce, the grandson whom she had raised from birth and who lived with her as a member of her household until the time of her death, than she did for his brothers and sister, who were much older than he, or even her own children. She obviously deemed his needs to be greater than theirs and it is clear that he was the principal object of her bounty until he attains the age of 25 years.

With respect to the income from the trust fund, testatrix did not direct her trustees to expend a "portion" or "part" or "some" of the net income for the education, maintenance and support of Bruce, but rather instructed them to use "the" net income for such purpose until he attains the age of 25 years. Although she authorized and empowered the use of such income for such purposes in the "uncontrolled discretion" of the trustees, she did not at any time authorize or direct the use of same for the benefit of any other beneficiary named in her will. It seems obvious, therefore, that it was her intention, as expressed in her will, that Bruce should receive the benefit of *all* the income from the trust fund until he attained the age of 25 years, regardless of whether his formal education continued until that time and also regardless of whether he became self-supporting prior thereto.

The following language from the opinion in Jacoby's Estate 204 Pa. 188, 189-190 (1902) :

"It is always important in cases like the present to keep in mind the relation in which the donor stood, or which he assumed toward his object of bounty.

"There is a general rule that where a bequest has been made to one toward whom the donor has placed himself in loco parentis, either in a general or particular respect, that construction must be given it which is most favorable to the donee . . . This having been the attitude which Dr. Jacoby voluntarily assumed toward the Downs children in respect of their education, a liberal construction must be given to his bequest in the execution of his purpose."

In the opinion of this court, the instant case is analogous to Nicholson Estate, 355 Pa. 426 (1947), where testator bequeathed the residue of his estate to a trustee "to be kept in trust for his two boys to be given them at his discretion", and it was held that the words of the will, taken in conjunction with the surrounding circumstances, indicated an intention on the part of testator to make a gift to the beneficiaries and conferred upon the beneficiaries the equitable ownership thereof, with the discretion in the trustee merely as to the time and manner of payment.

Similarly, in Barrett's Estate, 53 Pa. Superior Ct. 103 (1913), where testator created a trust for the benefit of his nephew, conferring upon the trustees "full power to spend said money, principal and interest, in any way, and at any time that they may deem proper, for the benefit of said Donald Barrett", and further provided that "In the event of his death any unspent portion of the Five thousand dollars or of the income therefrom, shall revert to and form part of my residuary estate", it was held that the trustees did not have the power to accumulate income for distribution to the remaindermen at the termination of the trust at the expense of the beneficiary during the continuation of the trust. The Superior Court stated that the discretion conferred upon the trustees by testator "was not the absolute and unlimited discretion so earnestly contended

for by the able counsel for the trustees. When the testator declared that he created the trust fund 'for' Donald Barrett, he marked a boundary line within which his trustees were to act; beyond which they had no power to go. When he gave them express authority to expend the income and, if need be, the principal 'for the benefit' of his nephew, he again defined the zone within which the granted powers were to become active, the conferred discretion to be exercised. In a word then the discretion reposed in the trustees was a legal one, to be freely exercised by them within the limits marked by the testator, and always for the purpose of executing his intent in creating the trust. It is the right and duty of the orphans' court to supervise the exercise of such discretion so that the administration of the trust shall be in harmony with the will of its creator": Page 107.

Accordingly, this court holds that Bruce J. Campbell is entitled to the benefit of the entire income from the trust fund until he attains the age of 25 years subject, however, to the uncontrolled discretion of the trustees with respect to the manner in which such income shall be expended by him or for his benefit.

Upon the present state of the record, it does not appear that Bruce is prodigal, extravagant or a spendthrift. He is happily married, gainfully employed and living within his income (taking into consideration remittances out of the income of the trust). There appears to be no reason why the trustees should not be satisfied with his determination of the manner in which the income from the trust should be expended. Therefore, the balance of unexpended income, as shown by the account, will be awarded directly to Bruce, without prejudice, however, to the right of the trustees to exercise their uncontrolled discretion at any time prior to the termination of the trust as to the manner in which future income shall be expended by him or for his benefit.